**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VFI KR SPE I LLC and VARILEASE
FINANCE, INC.,

     Plaintiffs,

     v.

VIRGIN ISLANDS GOVERNMENT
HOSPITALS AND HEALTH
FACILITIES CORPORATION and
GOVERNOR JUAN F. LUIS HOSPITAL
AND MEDICAL CENTER,

     Defendants.

Case No. 2:26-cv-11053
Honorable_____
Magistrate Judge _____

**COMPLAINT**

Plaintiffs VFI KR SPE I LLC and Varilease Finance, Inc., by and through

their counsel of record, Richard F. Ensor of the law firm MICHAEL BEST &

FRIEDRICH, LLP and Steven M. Ribiat of the law firm BROOKS WILKINS

SHARKEY & TURCO, PLLC, hereby complain against Defendants and allege as

follows:

1.     Plaintiff VFI KR SPE I LLC ("**VFI KR**") is a Delaware limited

liability company with its principal place of business in Salt Lake County, Utah.

None of the members or sub-members of VFI KR are citizens of the U.S. Virgin Islands.

2.  Plaintiff Varilease Finance Inc. ("**Varilease**" and with VFI KR, collectively, "**VFI**" or "**Plaintiffs**") is a Michigan corporation with its principal place of business in Salt Lake County, Utah.

3.  Defendant Virgin Islands Government Hospitals and Health Facilities Corporation (**"Virgin Islands Government Hospitals")** is a public benefit corporation with its principal place of business in Christiansted, St. Croix, U.S. Virgin Islands.

4.  Defendant Governor Juan F. Luis Hospital and Medical Center ("**Juan F. Luis Hospital**") is a health care facility and entity with its principal place of business in Christiansted, St. Croix, U.S. Virgin Islands.

5.  Virgin Islands Government Hospitals and Juan F. Luis Hospital shall be referred to, collectively, as "**Defendants**."

6.  This Complaint is to enforce VFI's rights and obligations under a certain Master Lease Agreement ("**Master Agreement**") and accompanying Schedule No. 04 ("**Schedule**"), collectively referred to as the "**Lease**."  The Schedule, by its express terms, incorporates the Master Agreement's terms and conditions.

7.     This Complaint seeks relief for Defendants' breach of the Lease, including monetary damages, repossession of the equipment leased to Defendants, foreclosure on an all-asset lien, and/or any other appropriate relief.

8.     The Lease, by its terms, is governed by Michigan law.

9.     The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) excluding interest, costs, and attorney fees.

10.     The Court has jurisdiction pursuant to 28 U.S.C. 1332(a) because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between Plaintiffs and Defendants.

11.     Venue is proper in this Court because the Master Agreement contains an enforceable forum selection clause for federal or state court in Michigan.

12.     The parties also agreed in the Master Agreement that the state or federal courts for the State of Michigan have personal jurisdiction.

## GENERAL ALLEGATIONS

### The Lease

13.      VFI and Defendants entered into the Lease pursuant to which VFI leased certain medical equipment (the "**Equipment**") to Defendants.  The above-mentioned Lease documents are in Defendants' possession.

14.     The Lease has a Total Equipment Cost of $6,000,000; a Base Term of forty-eight (48) months; and Base Monthly Rental payments in the amount of

3

$149,400 per month. The Schedule identified generally the Equipment, which is more particularly described in the attached Exhibit 1.

15. The Lease's Base Term commenced on April 1, 2025.

16. Additionally, Section 15(b) of the Master Agreement states:

> Prior to and during the term of the Lease, Lessee will furnish Lessor with Lessee's annual audited financial statements no later than ninety (90) days after its fiscal year end and a copy of its quarterly unaudited financial statements within forty-five days after the end of each fiscal quarter.

17. Varilease assigned the Lease to VFI KR. Varilease remains the servicing agent for the Lease.

### Default and Remedies

18. Section 16(a)(i) of the Master Agreement states that an Event of Default occurs if "[Defendants] fails to pay any installment of rent or other charge or amount due under the Lease when the same becomes due and payable and such failure continues for ten (10) days after its due date . . ."

19. Section 16(a)(viii) of the Master Agreement states that an Event of Default occurs if "[Defendants] …. shall fail to provide financial statements to [VFI] as provided for in Section 15(b) hereof."

20. Section 16(b) of the Master Agreement sets forth certain VFI remedies in the Event of Default:

4

…. Upon the happening of any Event of Default, [VFI] may declare [Defendants] to be in default. . . . [Defendants] authorizes [VFI] at any time thereafter, with or without terminating the Lease, to enter any premises where the Equipment may be and take possession of the Equipment. [Defendants] shall, upon such declaration and notice of default, without further demand, immediately pay [VFI] an amount which is equal to (i) any unpaid amount due on or before [VFI] declared the Lease to be in default, plus (ii) the greater of (a) the sum of the remaining monthly rentals and other amounts owed under the Lease, including interest, as provided herein, or (b) as liquidated damages for loss of a bargain and not as a penalty, an amount equal to the Stipulated Loss Value for the Equipment computed as of the date the last rental payment was due prior to the date [VFI] declared the Lease to be in default, together with interest, as provided herein, plus (iii) all attorney fees and court costs incurred by [VFI] relating to the enforcement of its rights under the Lease. After an Event of Default, at the request of [VFI] and to the extent requested by [VFI], [Defendants] shall immediately comply with the provisions of Section 6(d) and [VFI] may sell the Equipment at a private or public sale, in bulk or in parcels, with or without notice, and without having the Equipment present at the place of sale; or [VFI] may lease, otherwise dispose of or keep idle all or part of the Equipment, subject however, to its obligation to mitigate damages.

21.     Section 13(b) of the Master Agreement states that the Stipulated Loss Value is defined as "start[ing] at 110% of [VFI's] original equipment cost and declin[ing] by 1.25% per month during the Base Term and will not decline any further after the expiration of the Base Term."

**Defendants' Breach of the Lease**

22.     Defendants have failed to pay the full Base Monthly Rental for November 2025, and have paid no Base Monthly Rentals for December 2025, January 2026, and February 2026.

23.     Defendants also failed to provide Plaintiffs with the required and requested financial statements for fiscal years 2021, 2022, 2023, 2024, and 2025.

24.     Each of these failures constitutes an Event of Default under the Lease.

25.     On February 27, 2026, VFI sent Defendants a letter notifying them of their defaults and requesting that the Equipment be returned to VFI.

26.     To date, Defendants have failed to cure their Events of Default or return the equipment.

## COUNT I – BREACH OF LEASE
### (Against Defendants)

27.     Plaintiffs re-allege the previous paragraphs as if fully set forth herein.

28.     The Lease constitutes a binding enforceable contract.

29.     Plaintiffs performed all their obligations under the Lease.

30.     Defendants breached the Lease by failing to pay the full Base Monthly Rental for November 2025, and by failing to pay Base Monthly Rentals for December 2025, January 2026, and February 2026. Defendants also

breached the Lease by failing to provide Plaintiffs with the required financial statements.

31.     As a direct result of Defendants' breach of the Lease, Plaintiffs are entitled to the unpaid amounts due and owing as of the date that Defendants were notified of the Events of Default; the Stipulated Loss Value as of the date that Defendants were notified of the Events of Default; plus interest, attorney fees and costs.

32.     The Stipulated Loss Value, as of February 27, 2026, was $5,850,000.

33.     Plaintiffs are entitled to the amount of $507,600 for unpaid amounts owed as of February 27, 2026; Stipulated Loss Value in the amount of $5,850,000; plus interest, attorney fees and costs.

WHEREFORE, Plaintiffs respectfully request a judgment against Defendants for the following relief: (i) damages in an amount of $6,357,600; (ii) attorney fees and costs pursuant to Section 16(b) of the Master Agreement; (iii) all pre- and post-judgment interest to which Plaintiffs are entitled; and (iv) any other additional relief that this Court deems just and proper.

### COUNT II –CLAIM AND DELIVERY
**(Against Defendants)**

34.     Plaintiffs re-allege the previous paragraphs as if fully set forth herein.

35.    The Lease is a true lease and Plaintiffs are the owners of the Equipment.

36.    Additionally, Defendants granted Plaintiffs a cautionary security interest in the Equipment.

37.    Defendants took care, custody, control, and possession of the Equipment owned by Plaintiffs.

38.    A complete list of the Equipment owned by Plaintiffs that is within Defendants' care, custody, control and possession is identified in Exhibit 1 attached hereto.

39.    Each item of Equipment is an independent, identifiable item of personal property.

40.    The aggregate value of Plaintiffs' Equipment is $6,000,000.

41.    As set forth above, Defendants have wrongfully breached the Lease by failing to pay the agreed upon Base Monthly Rentals and failing to provide the required financial statements.

42.    Plaintiffs have a valid and superior ownership interest in the Equipment and, given Defendants' breach, Plaintiffs have an immediate right to possession of Plaintiffs' Equipment.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order: (i) requiring Defendants to return Plaintiffs' Equipment in Defendants' possession,

8

custody or control and/or instructing the appropriate law enforcement official or court officers to seize and return the Equipment to Plaintiffs; (ii) awarding Plaintiffs damages equal to the value of any of the Equipment that Defendants have damaged, destroyed, concealed, disposed of, or otherwise used so as to substantially impair its value; (iii) attorney fees and court costs pursuant to Section 16(b) of the Master Agreement; (iv) all pre- and post-judgment interest to which Plaintiffs are entitled; and (v) any other additional relief that this Court deems just and proper.

## COUNT III – FORECLOSURE OF SECURITY INTEREST
### (Against Defendants)

43.     Plaintiffs re-allege the previous paragraphs as if fully set forth herein.

44.     Section 2(b) of the Master Agreement grants Plaintiffs a security interest in any and all of Defendants':

> goods, chattels, fixtures, equipment, assets, accounts receivable, contract rights, general intangibles and property of every kind wherever located in which [Defendants] has any interest and the proceeds thereof, and agrees that any security interest created by this Master Agreement secures any and all obligations of [Defendants] and those of any affiliate of [Defendants] to [VFI] whether now in existence and/or to come into existence.

45.     Consistent with this provision, Plaintiffs filed a UCC Financing Statement on May 7, 2024, with the Office of the Lieutenant Governor for the

9

United States Virgin Islands, file number 20240000222, covering "any and all goods, chattels, fixtures, equipment, assets, accounts receivable, contract rights, general intangibles and property of every kind wherever located in which [Defendants] has any interest and proceeds thereof."

46. Plaintiffs are therefore entitled to a judgment and decree of foreclosure on their all-asset lien against all assets of Defendants and to enforce their perfected security interest and lien in such assets by taking immediate possession thereof.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment and decree of foreclose of Plaintiffs' lien against all assets of Defendants, permitting enforcement of Plaintiffs' security interest in such assets by taking immediate possession thereof.

## COUNT IV—SPECIFIC PERFORMANCE
### (Against Defendants)

47. Plaintiffs re-allege the previous paragraphs as if fully set forth herein.

48. Pursuant to the Master Agreement Section 6(d) and 16(b), Defendants are required to take certain affirmative steps upon an Event of Default and Plaintiffs request to return the Equipment, including:

- return the Equipment to [VFI] at such location as shall be designated by [VFI] in the same operating order, repair, condition, and appearance as of the date the Equipment was installed, reasonable wear and tear excepted, with all current engineering changes prescribed by the manufacturer of the Equipment or a maintenance contractor approved by [VFI] (the "Maintenance Organization") incorporated in the Equipment;

49.     Plaintiffs are entitled to specific performance by Defendants of the foregoing duties to return the Equipment as prescribed by the Lease.

WHEREFORE, Plaintiffs request that the Court enter an order compelling Defendants to specifically perform as set forth above.

Respectfully submitted March 31, 2026.

By: */s/ Steven M. Ribiat*
Brooks Wilkins Sharkey & Turco, PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 971-1800
ribiat@bwst-law.com

and

By: */s/ Richard F. Ensor*
Michael Best & Friedrich
650 South Main Street, Suite 500
Salt Lake City, UT 84101
rfensor@michaelbest.com
Tel: (801) 833-0506
*Attorneys for Plaintiffs*